1  Filippo Marchino, Esq. (SBN 256011)
   FM@XLAWX.com
2  Carlos X. Colorado, Esq. (SBN 231031)
   CC@XLAWX.com
3  Thomas E. Gray, Esq. (SBN 299898)
   TG@XLAWX.com
4  **THE X-LAW GROUP, P.C.**
   625 Fair Oaks Ave, Suite 390
5  South Pasadena, CA 91030
   Tel: (213) 599-3380 / Fax: (213) 599-3370
6
   Class Counsel and Attorneys for
7  Plaintiffs Frankie Lomas, Roxanda Yancor,
   Jose Alvarado, and Maria Alvarado
8  Individually and on Behalf of All Others
   Similarly Situated
9
   DAVID K. WILLINGHAM (SBN 198874)
10 dwillingham@kslaw.com
   ARWEN R. JOHNSON (SBN 247583)
11 arwen.johnson@kslaw.com
   **KING & SPALDING LLP**
12 633 West Fifth Street, Suite 1600
   Los Angeles, California 90071
13 Telephone: (213) 443-4355 / Facsimile: (213) 443-4310
14 JEFFREY J. ELLIS (admitted pro hac vice)
   jeff.ellis@clydeco.us
15 DAVID F. KNAPP (admitted pro hac vice)
   david.knapp@clydeco.us
16 **CLYDE & CO US LLP**
   405 Lexington Avenue, 16th Floor
17 New York, New York 10174
   Telephone: (212) 710-3900 Facsimile: (212) 710-3950
18 [Additional counsel listed on signature page.]
   Attorneys for Defendant
19 DELTA AIR LINES, INC.

20

21                    **UNITED STATES DISTRICT COURT**

22                    **CENTRAL DISTRICT OF CALIFORNIA**

23

| | |
|---|---|
| In Re: Delta Air Lines, Inc. | Lead Case No. LA CV20-00786 JAK (SKx) |
| | Consolidated Case No. LA CV20-00786 JAK (SKx) |
| FRANKIE LOMAS, ROXANDA YANCOR, JOSE ALVARADO, and MARIA ALVARADO, Individually | **CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT NOTICE OF MOTION AND MOTION FOR** |

24

25

26

27

28

1   and on Behalf of All Others Similarly
    Situated
2
3                    Plaintiffs,
4        v.
5   DELTA AIR LINES, INC. a Delaware
    Corporation
6
7                    Defendant.
8

**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Judge: John A. Kronstadt

Date: September 15, 2025
Time: 8:30 a.m.
Place: Courtroom 10C

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Monday, September 15, 2025 at 8:30 a.m., or as soon thereafter as this matter may be heard, in the above-entitled Court located at 255 E. Temple Street, Courtroom 540 of the Roybal Federal Building and United States Courthouse, 5th Floor, Los Angeles, California 90012, Plaintiffs Frankie Lomas, Roxanda Yancor, Jose Alvarado, and Maria Alvarado (collectively "Plaintiffs") and Defendant Delta Air Lines, Inc. ("Delta") will and hereby do jointly move for the Court's preliminary approval of the Settlement they have reached with the assistance of mediator Hon. Louis Meisinger (Ret.). Plaintiffs and Delta also respectfully jointly move for approval of the proposed plan to notify the members of the Class previously certified by the Court, who will receive significant compensation in exchange for the proposed resolution of their claims.

The joint motion is brought on the grounds, *inter alia*, that the Settlement and the proposed class notice satisfy the standards for preliminary approval under Rule 23(e); the Settlement was reached after extensive and vigorous litigation by Plaintiffs and Delta; the Settlement is fair, reasonable and adequate and was reached over the course of many arm's-length mediation sessions with Hon. Louis Meisinger, a respected mediator; and the Settlement treats class members equitably and provides meaningful relief to the class given the risks and uncertainties of continued litigation and Delta's vigorous denial of liability and strong defenses.

This joint motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Marchino and Datilo Declarations and exhibits; on all other papers, pleadings, and records on file or subject to judicial notice; and on such oral argument as may be heard.

This motion is made following the conferences of counsel under L.R. 7-3, which took place over several months leading up to the filing of this joint motion.

Dated:  August 25, 2025

**THE X-LAW GROUP, P.C.**

By:  */s/ Filippo Marchino*
　　　FILIPPO MARCHINO
　　　Class Liaison Counsel and Attorneys

Dated:  August 25, 2025

**KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
　　　ARWEN R. JOHNSON
　　　DAVID K. WILLINGHAM

**CLYDE & CO US LLP**
JEFFREY J. ELLIS
KEVIN R. SUTHERLAND
AUTUMN E. LEWIS
DAVID K. KNAPP

Attorneys for Defendant
DELTA AIR LINES, INC.

* Pursuant to Local Rule 5-4.3.4(a)(2), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................... 1

II.  BACKGROUND AND PROCEDURAL HISTORY .............................. 2

    A. Factual Background ............................................................................ 2

    B. Procedural Background ...................................................................... 2

       1.   Filing of the Complaint and Consolidation With the Personal Injury Actions ................................................ 2

       2.   Early Discovery ................................................................. 3

       3.   The First Standard of Care Motion .................................. 3

       4.   Class Certification Discovery ........................................... 4

       5.   Class Certification ............................................................ 4

       6.   Liability Discovery .......................................................... 5

       7.   Expert Discovery ............................................................. 5

       8.   Continued Motion Practice .............................................. 5

       9.   Mediation and Settlement ................................................ 6

      10.   Summary of Settlement Terms ......................................... 6

III.  LEGAL STANDARD FOR PRELIMINARY APPROVAL AND DECISION TO GIVE NOTICE .......................................................... 10

IV.  PLAINTIFFS' POSITION ................................................................... 11

    A. The Proposed Settlement is Fair, Reasonable, and Adequate ........ 11

       1.   Plaintiffs and Class Counsel Have Adequately Represented the Class. ..................................................... 12

       2.   The Settlement is the Result of Arm's Length Negotiations ........ 13

       3.   The Settlement Provides Substantial Compensation. .................... 14

4.    The Settlement Treats Class Members Equitably Relative to
Each Other. ...................................................................................19

B. The Court Already Certified the Class............................................................20

C. The Proposed Settlement Administrator Should Be Appointed and the
Proposed Notice Plan Approved. ..............................................................21

D. The Court Should Schedule a Fairness Hearing and Related Dates. ............22

V.    DELTA's POSITION ............................................................23

VI.    CONCLUSION...................................................................25

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. SeaWorld Entm't., Inc.*,
No. 14-CV-02129-MMA-AGS, 2020 WL 4260712 (S.D. Cal. July 24,
2020) ........................................................................................................ 13, 16

*Beaver v. Tarsadia Hotels*,
No. 11-cv-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28,
2017) ................................................................................................................ 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................ 13, 14, 18

*Cheng Jiangchen v. Rentech, Inc.*,
No. 17-1490, 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................ 13, 16

*Evans v. Zions Bancorp., N.A.*,
No. 2:17-CV-01123 WBS DB, 2022 WL 3030249 (E.D. Cal. Aug. 1,
2022) ................................................................................................................ 13

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ............ 20

*Fleming v. Impax Labs. Inc.*,
2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .................................................. 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) (overruled on other grounds) ...................... 11, 14

*Hawkins v. Kroger Co.*,
No. 15CV2320 JM (AHG), 2021 WL 2780647 (S.D. Cal. July 2,
2021) ................................................................................................................ 20

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............. 12

*Hilsley v. Ocean Spray Cranberries, Inc.*,
No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616 (S.D. Cal. Jan. 31,
2020) ................................................................................................................ 17

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Hudson v. Libre Tech. Inc.*,
   No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13,
   2020) ................................................................................................................ 12, 13

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ............................................................................. 10

*In re Illumina, Inc. Sec. Litig.*,
   No. 3:16-CV-3044-L-MSB, 2021 WL 1017295 (S.D. Cal. Mar. 17,
   2021) ................................................................................................................... 20

*Loomis v. Slendertone Distribution, Inc.*,
   No. 19-CV-854-MMA (KSC), 2021 WL 873340 (S.D. Cal. Mar. 9,
   2021) ................................................................................................................... 20

*Markson v. CRST Int'l, Inc.*,
   No. 5:17-CV-01261-SB-SP, 2022 WL 1585745 (C.D. Cal. Apr. 1,
   2022) ................................................................................................................... 11

*ODonnell v. Harris Cnty., Texas*,
   No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .............. 20, 21

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................ 18

*Retta v. Millennium Prod.,Inc.*,
   No. CV15-1801 PSG .......................................................................................... 18

*Rodriguez v. W. Pub. Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 20, 21

*Soto v. Diakon Logistics (Delaware), Inc.*,
   No. 8-CV-33-L-(JLB), 2015 WL 13344896 (S.D. Cal. Feb. 5, 2015) .............. 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .............................................................................. 11

*Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*,
   No. SACV171988JVSDFMX, 2019 WL 8647819 (C.D. Cal. Nov. 4,
   2019) ................................................................................................................... 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................ 18

iii

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) ................................................................................19

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) .................................................................20

*In re Wells Fargo & Co. Sharehold Derivative Litig.*,
   No. 16-CV-05541-JST, 2019 WL 13020734 (N.D. Cal. May 14, 2019) ................................................................................................................14

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................6

Federal Aviation Act ..............................................................................................24

Internal Revenue Code § 468B ..............................................................................10

**Other Authorities**

Fed. R. Civ. P. 12 .....................................................................................................4

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................11, 21

Fed. R. Civ. P. 23(e) .........................................................................................10, 11

Fed. R. Civ. P. 23(e)(1), (5) ...................................................................................11

Fed. R. Civ. P. 23(e)(1), 2018 ................................................................................20

Fed. R. Civ. P. 23(e)(1)(B) .............................................................................10, 21

Fed. R. Civ. P. 23(e)(2) .....................................................................................11, 19

Fed. R. Civ. P. 23(e)(2), 2003 ................................................................................19

Fed. R. Civ. P. 23(e)(2), 2018 .....................................................................11, 14, 19

Fed. R. Civ. P. 23(e)(2)(A) ...............................................................................12, 13

Fed. R. Civ. P. 23(e)(2)(B) .....................................................................................13

Fed. R. Civ. P. 23(e)(2)(C) .....................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................................14

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..................................................................... 17

Fed. R. Civ. P. 23(e)(2)(C)(iv) ..................................................................... 19

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................... 19

Fed. R. Civ. P. 23(e), 2018 ................................................................. 12, 13, 16

Federal Rule of Procedure 60(b)(6) ................................................................. 6

Rule 23 ...................................................................................................... 10, 11

Rule 23(a)(4) ................................................................................................... 13

Rule 23(a)(4) and Rule 23(g) .......................................................................... 12

Rule 23(b)(3) ..................................................................................................... 4

Rule 23(e)(1) .............................................................................................. 20, 25

Rule 23(e)(2), and (ii) ..................................................................................... 10

Rule 23(e)(2)(c)(ii)'s ....................................................................................... 17

Rule 23(e)(3) .............................................................................................. 14, 19

Rule 23(e)'s ........................................................................................................ 2

Rule 23(h) ........................................................................................................ 19

1  **I.     INTRODUCTION**

2        Plaintiffs Frankie Lomas, Roxanda Yancor, Jose Alvarado, and Maria Alvarado

3  (collectively "Plaintiffs") and Defendant Delta Air Lines, Inc. ("Delta") respectfully

4  jointly move for the Court's preliminary approval of the Settlement they have reached

5  with the assistance of mediator Hon. Louis Meisinger (Ret.). Plaintiffs and Delta also

6  respectfully jointly move for approval of the proposed plan to notify the members of

7  the Class previously certified by the Court, who will receive significant compensation

8  in exchange for the proposed resolution of their claims.[1]

9        As detailed below, this Settlement includes both a non-reversionary monetary

10  component in the amount of $78,750,000 as well as non-monetary benefits to the Class,

11  and was the product of a mediator's proposal following more than three years of

12  mediated settlement negotiations between experienced counsel for Plaintiffs and Delta.

13        This Settlement is informed by an extraordinary degree of discovery and motion

14  practice.  The Parties produced more than 418,000 pages of documents in discovery,

15  took more than 50 depositions, and hired 20 experts.  [See Declaration of Filippo

16  Marchino, hereinafter "Marchino Decl." ¶¶ 3-10.]  Plaintiffs previously obtained class

17  certification and survived multiple dispositive motions.

18        As a result, Plaintiffs and their counsel are well-positioned to evaluate the

19  strengths and weaknesses of Plaintiffs' case, as well as the proposed Settlement.

20  Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the

21  challenges of proving their claims at trial, the uncertainty of what amounts the jury

22  would award even if Plaintiffs prevail on liability, and the risk and potential for delay

23  associated with preserving any favorable trial verdict and damage award on appeal.

24        As set forth in the Parties' Settlement Agreement, and as further explained in

25  Section V below, Delta is entering this Settlement without any admission of liability

26  _____

27  [1] Plaintiffs are concurrently filing a separate motion pertaining to fees, costs, and class
representative service awards that will include the information specified in the Court's

28  standing order.  [Dkt. No. 8 at 16.]

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

and vigorously denies all claims asserted against it in the Action, all allegations of wrongdoing and liability, and all material allegations in the Action and any related cases. Delta contends that, if this matter were to be further litigated, Delta would have strong defenses both on the merits and as to Plaintiffs' alleged damages, as well as meritorious procedural defenses. Nevertheless, Delta recognizes the benefits of settling this Action on the terms set forth in the Settlement Agreement solely for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings.

For the reasons set forth below, Plaintiffs and Delta respectfully request that the Court find that the Settlement satisfies Rule 23(e)'s standard for preliminary approval, approve notice to each of the Classes, and set a schedule for final settlement approval.

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.     Factual Background

This litigation arises from the January 14, 2020 fuel jettison by Delta flight No. DL89, a flight operated by Defendant Delta Air Lines, Inc. that was destined for Shanghai, China from LAX. After the aircraft experienced an engine malfunction emergency shortly after takeoff, the crew jettisoned fuel during its return to LAX to reduce the risks associated with an overweight emergency landing. As is relevant here, Plaintiffs have alleged that Delta committed trespass when a portion of the jettisoned jet fuel landed on tens of thousands of homes in Los Angeles and Orange Counties. Plaintiffs have contended that the owners and occupants of these properties are entitled to damages as a result of this trespass. Delta denies these contentions.

### B.     Procedural Background

#### 1.     Filing of the Complaint and Consolidation With the Personal Injury Actions

Plaintiffs Lomas and Yancor filed this lawsuit on January 24, 2020, ten days after the jettison. [Dkt. No. 1.] The original complaint alleged claims for negligence, private nuisance, and trespass. [*Id*. at ¶¶ 36-61.]

In the days following the filing of Plaintiffs' class action complaint, a number of

CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1 | personal injury actions relating to the jettison were removed from state court to federal
2 | court, related, and ultimately consolidated with this action for pretrial purposes.  [Dkt.
3 | No. 33 at 3.]  Thereafter, the plaintiffs in the consolidated cases submitted a proposal to
4 | appoint Matthew S. McNicholas and Jeffrey R. Lamb of McNicholas & McNicholas,
5 | LLP to act as Liaison Counsel on behalf of the non-class-related plaintiffs and Plaintiffs'
6 | counsel Filippo Marchino and Carlos X. Colorado to act as Liaison Counsel on behalf
7 | of the class-related plaintiffs.  [Dkt. No. 35; Dkt. No. 38 at 1-3.]  These four counsel
8 | also were appointed as discovery counsel.  [Dkt. No. 38 at 3-4.]

9 | ### 2.    Early Discovery

10 | Delta served an initial set of requests for production on Lomas and Yancor on
11 | June 5, 2020, which Plaintiffs responded to.  [Marchino Decl. ¶ 3.]

12 | Plaintiffs began conducting discovery on November 25, 2020 by jointly serving,
13 | along with the personal injury plaintiffs, a set of requests for production on Delta.
14 | [Marchino Decl. ¶ 3.]  This was the only written discovery the personal injury plaintiffs
15 | participated in propounding, with all remaining written discovery being solely the
16 | product of Class Plaintiffs' counsel.  [*Id.*]

17 | ### 3.    The First Standard of Care Motion

18 | On January 15, 2021, Delta filed a motion arguing that federal law preempted the
19 | state law, which it contended resulted in a federal standard of care applying to some of
20 | the personal injury plaintiffs' claims and required dismissal of Plaintiffs' trespass and
21 | nuisance claims.  [Dkt. No. 59.]  Plaintiffs and the personal injury plaintiffs filed
22 | separate opposition briefs and Delta filed a reply.  [Dkt. Nos. 60, 61, 63.]  Ultimately,
23 | the Court denied Delta's motion to dismiss the Plaintiffs' trespass and nuisance claims
24 | on the basis of express preemption, held that a federal standard of care applies to the
25 | adjudication of the claims for negligence, negligent infliction of emotional distress, and
26 | negligent hiring, supervision, training and/or retention, and deferred a ruling on the
27 | application of a federal standard because "there is not a sufficient presentation in the
28 | briefing as to how that federal standard of care is defined or applied. And, evidence as

to such matters is not properly presented in connection with a motion under Fed. R. Civ. P. 12." [Dkt. No. 249 at 12-13.]

### 4.   Class Certification Discovery

Following the Court's ruling on the standard of care motion, Plaintiffs turned their focus to class certification discovery.  They propounded 272 discovery requests and obtained 14,156 pages of documents in the time before they filed their class certification motion.  [Marchino Decl. ¶ 4.]. Delta, for its part, served 224 written discovery requests and deposed each of the four Plaintiffs. [*Id.*]

### 5.   Class Certification

On March 14, 2022, Plaintiffs filed their motion for class certification, which was accompanied by seven expert declarations supporting the motion.  [Dkt. Nos. 297, 297-3, 297-5, 297-7, 297-9, 297-11, 297-12, 297-14.]   Delta deposed six of Plaintiffs' experts [Marchino Decl. ¶ 7] before filing an opposition brief supported by three expert witness declarations as well as Daubert motions directed at three of Plaintiffs' experts. [Dkt. Nos. 313, 313-6, 313-8, 313-10, 314, 315, 316.]  Plaintiffs then filed their class certification reply brief and opposed Delta's Daubert motions.  [Dkt. Nos. 322, 324, 325, 326.]  Subsequently, Delta filed replies in support of its Daubert motions.  [Dkt. Nos. 333, 334, 335.]

The Court held the hearing on class certification on June 6, 2022, where it stated its tentative decision to certify a Rule 23(b)(3) trespass class.  [Dkt. No. 347.]  The Court issued its order on class certification on February 8, 2023, which, consistent with the tentative decision, certified a class on the trespass claim with the following class definition:

> All persons who, on January 14, 2020, owned, resided in, or rented one of the properties included on the list of affected residences prepared by John A. Kilpatrick. The class excludes counsel representing the class and all persons employed by said counsel, governmental entities, Delta Air Lines, Inc., its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and

4

judicial staff, and any other individual whose interests are antagonistic to other class members, including class members who sold their properties after the incident without disclosing it to the purchaser in advance of the sale. The class also excludes any person who has filed a claim in court against Delta Air Lines, Inc. arising out of the January 14, 2020 fuel jettison, other than the named plaintiffs in this action: Frankie Lomas, Roxanda Yancor, Jose Alvarado, and Maria Alvarado.

[Dkt. No. 401 at 21.] The Court denied Delta's Daubert motions, but stated for each of Plaintiffs' experts that "this ruling is not a final determination as to the overall reliability of [the expert's] testimony with respect to any future proceedings in this action." [Dkt. No. 401 at 9, 10, 11.]

### 6. Liability Discovery

Following the class certification hearing, Plaintiffs turned their attention to liability discovery. They served 435 discovery requests, obtained 54,028 pages of documents, and deposed 16 Delta employee witnesses. [Marchino Decl. ¶ 6.] Delta deposed numerous first responders and other fact witnesses. [*Id.*] It also served another 532 discovery requests on Plaintiffs. [*Id.*]

### 7. Expert Discovery

Plaintiffs disclosed 13 expert witnesses who would testify at trial, including the seven who submitted declarations at class certification. [Marchino Decl. ¶ 7.] Delta disclosed eight expert witnesses. [*Id.*] Delta deposed six of Plaintiffs' experts, including deposing three experts that Delta had previously deposed in conjunction with class certification. [*Id.*] Plaintiffs deposed each of Delta's expert witnesses. [*Id.*]

### 8. Continued Motion Practice

Following the close of discovery, Delta filed several motions, each of which Plaintiffs opposed:

- A motion for summary judgment on the federal standard of care. [Dkt. No. 490.]

- A motion for partial summary judgment. [Dkt. No. 542.]

- Daubert motions directed at the same three experts Delta previously sought

5

1    to exclude.  [Dkt. Nos. 539-541.]

2    Plaintiffs filed a motion to exclude one of Delta's experts, which Delta opposed.

3    [Dkt. No. 543.]

4    On October 27, 2023, the Court issued an order denying Delta's federal standard

5    of care motion for summary judgment.  [Dkt. No. 603.]  Following the denial of this

6    motion, Delta then filed a motion for reconsideration and a 28 U.S.C. § 1292(b) motion,

7    which Plaintiffs opposed.  [Dkt. Nos. 625, 626.]  Following a hearing on these motions,

8    the Court issued an order denying them.  [Dkt. No. 662.][2]

9    Plaintiffs also filed a motion for approval of their class notice plan, which was

10   opposed by Delta.  [Dkt. Nos. 607, 613, 615.]  The Court stated its tentative decision to

11   grant in part the motion and took the matter under submission.  [Dkt. No. 624.]

12              **9.    Mediation and Settlement**

13   Plaintiffs and Delta agreed to mediate in front of the Hon. Louis Meisinger (Ret.)

14   of Signature Resolution in Century City, CA.  [Marchino Decl. ¶ 11.]  Following the

15   Court's hearing on class certification, the parties participated in multiple mediations

16   with Judge Meisinger, culminating in a mediator's proposal that was accepted by both

17   sides and provided the basis for this settlement.  [*Id*.]  The monetary award to the class,

18   attorneys' fees, costs, incentive payments, and nonmonetary relief, discussed in greater

19   detail below, were all components of Judge Meisinger's proposal.  [*Id*.]

20              **10.   Summary of Settlement Terms**

21   The settlement provides substantial cash compensation to Class Members as well

22   as nonmonetary benefits through a streamlined, state-of-the-art claims process, among

23   other important and valuable benefits explained further below.

24

25

26   _____

[2] As set forth in Sections III.C(ii) and III.G(5) of the Settlement Agreement, the Parties

27   agree that the Court should vacate, pursuant to Federal Rule of Procedure 60(b)(6), the
     Court's October 27, 2023 Order Re Defendant's Motion for Summary Judgment on the

28   Federal Standard of Care (Dkt. Nos. 602, 603).

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### a.    The Class Definition

The class definition is the same as the one adopted by the Court in its class certification order:

> All persons who, on January 14, 2020, owned, resided in, or rented one of the properties included on the list of affected residences prepared by John A. Kilpatrick. The class excludes counsel representing the class and all persons employed by said counsel, governmental entities, Delta Air Lines, Inc., its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any other individual whose interests are antagonistic to other class members, including class members who sold their properties after the incident without disclosing it to the purchaser in advance of the sale. The class also excludes any person who has filed a claim in court against Delta Air Lines, Inc. arising out of the January 14, 2020 fuel jettison, other than the named plaintiffs in this action: Frankie Lomas, Roxanda Yancor, Jose Alvarado, and Maria Alvarado.

Settlement Agreement § II(E).  [Dkt. No. 401 at 21.][3]

### b.    Settlement Benefits to Class Members

The settlement provides both monetary and nonmonetary benefits to class members.

The Settlement Fund consists of $78,750,000.  Settlement Agreement § II(II). After deduction for attorneys' fees, litigation costs, service awards, and settlement administration, the Net Settlement Fund is anticipated to be $50,590,000.[4]  [Marchino Decl. ¶ 13.]

---

[3] During the process of compiling the documents necessary for the approval, Class Plaintiffs and Delta recognized that there were some properties that had been omitted, as a likely result of an overly aggressive digital filter, from the APN list of Dr. Kilpatrick. After review, the Parties agreed to amend the list to reflect these additional properties: while the class definition has not changed, the scope has been marginally increased by approximately 1,000 properties to a total of around 38,000 properties.

[4] To the extent that the service awards, costs, or attorneys' fees awarded are less than sought, or that the settlement administration costs are less than the $2.1 million, the amount distributed to the Class would increase accordingly.  Settlement Agreement § III(O).

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

All Class members may submit claims for cash compensation with the amount they receive depending on whether they owned, resided, or both owned and resided in one of the 1-4 unit properties identified by Kilpatrick.

67% of the Net Settlement Fund would be distributed on a per property basis[5] to owners who submit an approved Class Member Claim Form, while 33% will be distributed on a per person basis to residents who submit an approved Class Member Claim Form.  Settlement Agreement §§ II(V), II(BB), III(L)(ii)–(iii).

If the Net Settlement Fund is $50,590,000, this amounts to $33,895,300 that will be collectively awarded to the property owners, with each property owner receiving $888.82 if there is a 100% claim submission rate. [Marchino Decl. ¶¶ 13-14.]  Using 160,000 as the estimated number of residents, the residents would collectively receive $16,694,700, and each resident would receive $104.34 if there is a 100% submission rate. [Id.]  A family of four that owns and resides in a property would receive a total of $1,326.60. [Marchino Decl. ¶¶ 19-20.]  If, on the other hand, there is a 50% claim submission rate, given the same Net Settlement Fund, each property owner would receive $1,777.64, and each resident would receive $208.68, such that a family of four that owns and resides in a property, would receive a total of $2,612.36. [Marchino Decl. ¶¶ 21-23.]

The settlement also provides a nonmonetary benefit to class members.  As part of the Parties' mediation negotiations that led to this settlement, Plaintiffs and Delta jointly commissioned a laboratory bench study to evaluate the persistence of total petroleum hydrocarbon concentrations in soil, which determined that no Jet A petroleum hydrocarbons were detectable at the highest deposition level modeled by Plaintiffs' expert Cobb within one hour, and that even at ten times the predicted amount, no Jet A petroleum hydrocarbons were detectable after seven days.  [Marchino Decl. ¶

---

[5] If there is more than one owner of record on title for the property, the payment for the property will be divided equally among each of the owners.  Settlement Agreement § III(L)(ii).

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

19.]  A joint declaration by Plaintiffs' and Delta's experts describing the testing results will be attached to the class notice.  [Id.]  This benefit is thus made available to all class members, regardless of whether they opt out of the settlement.

### c.    Notice and Claims Administration

The parties selected Verita Global, LLC f/k/a KCC Class Action Services, LLC ("Verita") as the Settlement Administrator.  Settlement Agreement §II(DD).  This is the entity that Plaintiffs had previously identified in their class certification motion and motion for approval of notice.  [Dkt. No. 297 at 25; Dkt. No. 607 at 2-3.]  Verita has extensive experience in administering large-scale notice programs in complex class cases and is confident in the robust, multi-faceted Class Notice Program developed for the Class here.    [Dattilo Decl. ¶¶ 2-4.]    The fees and costs of the Settlement Administrator in developing and implementing the notice program and claims administration are estimated by Verita to likely be between $352,000 and $959,500 (assuming an estimated class size of 160,000 individuals and a 5% to 50% claims rate) and, at most, $2,100,000 (assuming an estimated class size of 160,000 and a 100% claims rate), which will be paid from the Settlement Fund.  [Marchino Decl. ¶ 14; Settlement Agreement § II(HH)–(II); Dattilo Decl. ¶¶ 23-24.].  Plaintiffs believe this is reasonable and necessary given the extensive size of the Class associated with some 38,000 properties and 160,000 individuals, as well as the proportional costs to send notice and administer payments.

### d.    Attorneys' Fees, Costs, and Service Awards

Class Counsel will apply to the Court for an award of reasonable attorneys' fees and costs not to exceed $24 million in fees (30.5% of the Settlement Fund) and $2 million in costs.  Settlement Agreement § III(N). Each of the Plaintiffs will also apply for service awards of $15,000 for a total of up to $60,000 to compensate them for their efforts and commitment in prosecuting this case on behalf of the Class.  Settlement Agreement § III(M). Any attorneys' fees, expenses, and service awards granted by the Court will be paid from the Settlement Fund.  Settlement Agreement §§ IIII(H).

e.    **Creation of a Qualified Settlement Fund**

A Qualified Settlement Fund ("QSF") shall be created pursuant to Internal Revenue Code § 468B and the Regulations issued thereto, with the QSF to be held by the Settlement Administrator, who will serve as the trustee.  Settlement Agreement § III(I)-(J).  This non-revisionary Settlement Fund shall be used consistent with the terms of the Agreement to:

- Pay valid and approved claims submitted by Class Members;
- Pay notice and related costs;
- Pay for settlement and claims administration, including expenses associated with the Settlement Administrator;
- Make residual cash payments of uncashed cashed settlement payments to Class Members who previously cashed their settlement checks or to a cy pres fund as is provided in § III(L)(v) of the Settlement Agreement;
- Pay Class Counsel's fees and costs as awarded by the Court;
- Make service award payments to Plaintiffs as awarded by the Court.

Settlement Agreement §§ IIII(H), III(L)(v).

## III.  LEGAL STANDARD FOR PRELIMINARY APPROVAL AND DECISION TO GIVE NOTICE

Class actions "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Ninth Circuit has stated that there is a "strong judicial policy . . . favor[ing] settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citation omitted). Federal Rule of Civil Procedure 23(e) governs a district court's analysis of a proposed class action settlement and creates a three-step process for approval.

*First*, a court must determine that it is "likely" to: (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing.  See Fed. R. Civ. P. 23(e)(1)(B); see also 2018 Advisory Committee Notes to Rule 23.

*Second*, a court must direct notice to the proposed class to give them an opportunity to object or to opt out. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). *Third*, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. Fed. R. Civ. P. 23(e)(2).

## IV.   PLAINTIFFS' POSITION

### A.   The Proposed Settlement is Fair, Reasonable, and Adequate.

Under Rule 23(e), the Court must determine "'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (overruled on other grounds)).

At the preliminary approval stage, the Court should assess whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Markson v. CRST Int'l, Inc.*, No. 5:17-CV-01261-SB-SP, 2022 WL 1585745, at *2 (C.D. Cal. Apr. 1, 2022) (citation omitted). Rule 23 sets out the "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note. These include whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms-length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The proposed Settlement readily satisfies these criteria.

1.   **Plaintiffs and Class Counsel Have Adequately Represented the Class.**

The Court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis includes "the nature and amount of discovery" undertaken in the case. Fed. R. Civ. P. 23(e), 2018 adv. comm. note.

Plaintiffs and Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for seven years, such that this factor is readily satisfied. See Fed. R. Civ. P. 23(e)(2)(A); 4 Newberg and Rubenstein on Class Actions § 13:49 (6th ed.) ("Newberg"). As detailed above, Class Counsel aggressively pursued fact and expert discovery, obtaining more than 68,000 pages of documents from Delta, preparing and defending numerous experts, and closely scrutinizing Delta's voluminous expert proof. Class Counsel also managed the extensive motion practice required by this case: they successfully obtained class certification, survived two federal standard of care motions filed by Delta, prevailed over Delta's attempts to seek reconsideration or 1292(b) certification of the order denying the second standard of care motion, and prevailed in many other motions. *See also Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*, No. SACV171988JVSDFMX, 2019 WL 8647819, at *6 (C.D. Cal. Nov. 4, 2019); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (class counsel "vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation").

Plaintiffs were also actively engaged in the case—each produced numerous documents, responded to hundreds of discovery requests each, sat for a deposition, and regularly communicated with Class Counsel up to and including evaluating and approving the proposed Settlement. [Marchino Decl. ¶ 20.]

Finally, the Rule 23(e)(2)(A) "analysis is redundant of the requirements of Rule 23(a)(4) and Rule 23(g)," *Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020); (quotation marks omitted).   This

Court previously held Rule 23(a)(4) was satisfied in certifying the Class as redefined by the Court.  [Dkt. No. 401 at 15-17.]  It follows from these prior ruling that "the adequacy factor under Rule 23(e)(2)(A) is also met." *Hudson*, 2020 WL 2467060, at *5.

### 2.     The Settlement is the Result of Arm's Length Negotiations.

The Court must also consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This "procedural concern[]" requires the Court to examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), 2018 adv. comm. note. "[C]ourts have found that the presence of a neutral third-party mediator" support of a finding that settlement was arms-length.  4 Newberg and Rubenstein on Class Actions § 13:50 (6th ed.); *see also Evans v. Zions Bancorp., N.A.*, No. 2:17-CV-01123 WBS DB, 2022 WL 3030249, at *7 (E.D. Cal. Aug. 1, 2022) ("[s]ettlements reached with the help of a mediator are likely non-collusive.") (citation omitted).

Here, the parties engaged in vigorous and contested settlement negotiations with the aid of Hon. Louis Meisinger (Ret.) a "neutral and experienced mediator[]." *Baker v. SeaWorld Entm't., Inc.*, No. 14-CV-02129-MMA-AGS, 2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020); *Soto v. Diakon Logistics (Delaware), Inc*., No. 8-CV-33-L-(JLB), 2015 WL 13344896, at *3 (S.D. Cal. Feb. 5, 2015).  The mediation efforts spanned 4 years and culminated in the mediator's proposal that formed the basis for the terms of this settlement agreement.  [Marchino Decl. ¶ 8.]

Class Counsel will apply for an award of attorneys' fees of up to $24,000,000, or approximately 30.5% of the Settlement Fund. This award will be "separate from the approval of the Settlement, and neither [Plaintiffs nor Class Counsel] may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees." *Cheng Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019).  Finally, no portion of the Common Funds will revert to Delta or its insurer. *See generally In re Bluetooth Headset Prods. Liab.*

1  *Litig.*, 654 F.3d 935, 947–949 (9th Cir. 2011).  For these reasons, no signs of collusion

2  are present here.  *Id*.

3      **3.**  **The Settlement Provides Substantial Compensation.**

4     The Court must "ensure the relief provided for the class is adequate," taking into

5  account (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any

6  proposed distribution plan, including the claims process; (3) the terms of any proposed

7  award of attorney's fees; and (4) any agreement made in connection with the proposal,

8  as required under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). These factors also

9  overwhelmingly support preliminary approval.

10         **i.**  **The Settlement Mitigates the Substantial Risks,**

11             **Expenses, and Delays the Class Would Bear with**

12             **Continued Litigation Through Trial and Appeal.**

13     To assess "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P.

14  23(e)(2)(C)(i), the Court must "evaluate the adequacy of the settlement in light of the

15  case's risks." *In re Wells Fargo & Co. Sharehold Derivative Litig.*, No. 16-CV-05541-

16  JST, 2019 WL 13020734, at *5 (N.D. Cal. May 14, 2019).  This requires weighing

17  "'[t]he relief that the settlement is expected to provide'" against "'the strength of the

18  plaintiffs' case[ and] the risk, expense, complexity, and likely duration of further

19  litigation.'"  *Id*. (alteration adopted) (first quoting Fed. R. Civ. P. 23(e)(2), 2018 adv.

20  comm. note; and then quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

21  1998)).

22     Here, the damages component of the settlement provides significant monetary

23  relief to class members.  This is complemented by the testing that was performed

24  pursuant to the agreement of Plaintiffs and Delta, which helps significantly mitigate the

25  harm property owners might face if they disclosed the fact that their properties were hit

26  by jettisoned fuel to prospective home buyers.  The fact that independent laboratory

27  testing established that there would not presently be any detectible level of

28  contamination from the jettison would likely significantly reduce or even completely

eliminate the diminution of value that these properties may have suffered. If each property owner attempted to test their property, it would cost, at least, approximately $5,000 per property,[6] or a total of $190,675,000.

At the same time, the results of this independent testing highlight one of the primary risks that have always faced Plaintiffs' claims with respect to the damages property owners suffered. Years after the jettison, the properties that were hit by jettisoned fuel are indistinguishable from those that were not. Thus Plaintiffs' property owner damages theories have rested on largely untested legal arguments: that property owners would be entitled to have the top few inches of soil removed and replaced to get rid of a portion of the jet fuel contaminants that are admittedly below detectable levels or that property owners have a duty to disclose the fact that jettisoned fuel landed on the properties even though any amount that remains is undetectable.

Although jurors could agree with Plaintiffs and their experts, they could also side with Delta and reject the notion that class members should be given money so that they can remove an undetectable amount of jet fuel residue and find persuasive Delta's argument that, in practice, homes in the class area do not sell for less than those outside of it. Given this background, the $888.82 per property that property owners in the class would receive, assuming a 100% claim rate, is reasonable.

In the case of the damages for residents, $104.34 per person, assuming a 100% claim rate, is a reasonable damages award for the partial loss of use and enjoyment of their properties. Again, it is difficult to predict how much a jury would value the harm represented by the jettisoned fuel causing a disagreeable odor to persist on class members' properties for a few days.

Had Plaintiffs secured a complete victory at trial (both on liability and damages), it is a near certainty that Delta would have engaged in "vigorous post-trial motion practices . . . and likely appeals to the Ninth Circuit—delaying any recovery for years."

---

[6] *See* Dkt. No. 297-12 at 18.

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   *Baker*, 2020 WL 4260712, at \*7. Delta has preserved all of its myriad arguments for
2   appeal, which would therefore potentially include a broad attack on every aspect of this
3   five-year-long litigation. This risk is especially strong with respect to Delta's standard
4   of care arguments, where, although Plaintiffs were successful at avoiding dismissal thus
5   far, the fact pattern of the case and attempts to apply the relevant standard of care
6   preemption law to trespass claims creates a risk that the Ninth Circuit might reverse the
7   Court. Of course, Class Counsel were prepared to defend their clients' case against
8   each of these challenges, just as they have repeatedly done in the face of the numerous
9   case-dispositive challenges to date. Nonetheless, risks remained, and significant and
10  painful delays to recovery would have been inevitable.

11      Finally, experienced counsel's support for the proposed Settlement also weighs
12  in favor of preliminary approval. *See Cheng Jiangchen*, 2019 WL 5173771, at \*6 ("The
13  recommendation of experienced counsel carries significant weight in the court's
14  determination of the reasonableness of the settlement." *Id.* (citation omitted)). This is
15  especially true given that extensive discovery and motion practice that has occurred.
16  Here, Class Counsel strongly support the proposed Settlement. Marchino Decl. ¶ 25.

17      In summary, the proposed Settlement offers substantial monetary and
18  nonmonetary relief and simultaneously avoids the inevitable years-long delays the Class
19  would have suffered if the case were successfully tried and then appealed. This reality,
20  and the potential risks outlined above underscore the strength of the proposed
21  Settlement.

22          **ii.    Class Members Will Obtain Relief Through a**
23                 **Straightforward Claims Process.**

24      The Court should consider "the effectiveness of any proposed method of
25  distributing relief to the class, including the method of processing class-member
26  claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or
27  defeat unjustified claims, but the court should be alert to whether the claims process is
28  unduly demanding." Fed. R. Civ. P. 23(e), 2018 adv. comm. note.

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Class members will be able to submit claim forms either by mail or online to receive their share of the Settlement Fund, divided in the manner described in section II(B)(10)(b) above.  An example of the claim form is attached as Exhibit C to the Settlement Agreement.  The claim form, which is just two pages long, will not be burdensome for class members to fill out.  Class members will provide their contact information, identify their property[7] in the class area, and specify whether they owned the property on January 14, 2020, rented or resided at the property on that date, or both.  They will be instructed to provide proof of ownership (title, deed, property tax records, etc.) or residence (lease, utility bill, etc.) on January 14, 2020.  Last, class members over the age of 14 are instructed to submit proof of identity, such as a driver's license or passport.  Parents or guardians will submit claims on behalf of claimants who are under the age of 14.

This plan readily satisfies Rule 23(e)(2)(c)(ii)'s requirement that settlement funds be distributed "in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020).  In addition, no settlement funds will revert to Delta; after payment of attorneys' fees, expenses, service awards, and notice administration, all money will be distributed to Class Members (or, possibly, in the case of uncashed checks, a *cy pres* beneficiary). Settlement Agreement § (III)(L)(v).  This is a "[s]ignificant[]" fact that further demonstrates the Settlement's fairness and effectiveness.  *Hilsley*, 2020 WL 520616, at *7.

### iii.   Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees and Expenses.

The terms of Class Counsel's "proposed award of attorney's fees, including timing of payment," are also reasonable.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  Class Counsel will move the Court for an award of attorneys' fees of up to 30.5% of the

---

[7] Class members with claims pertaining to more than one property (*e.g.*, ones who own multiple properties in the class area) are instructed to fill out one form per property.

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Settlement Fund ($24,000,000), plus costs of no more than $2 million.  "Courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award," but are empowered to adjust the award where there is an "adequate explanation in the record of any 'special circumstances,'" such as "exceptional results for the class," the "absence of supporting precedents," and the risk undertaken by Class Counsel.  *Compare In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  Courts in the Ninth Circuit "routinely" award fees that exceed the 25% benchmark where these factors are present. *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017); *Victor Lopez v. The GEO Group, Inc., et al.*, 2:14-CV-6639 (C.D. Cal. April 25, 2016 (awarding fee award of 33% of total recovery); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award of 33% of total recovery).

As noted, Class Counsel will seek a fee no greater than 33% of the recovery, given the exceptional results obtained for the Class, the absence of supporting precedents in this type of litigation, and the risks undertaken by Class Counsel over the last five years.  Class Counsel's actual fee request will be supported by Class Counsel's lodestar in the matter, which is currently estimated to equal approximately $10,466,435.00.  Marchino Decl. ¶ 26.  A 30.5% fee would represent a 2.3 multiplier on Class Counsel's loadstar based on current estimates, and that multiplier will reduce over time as Class Counsel oversee the settlement approval and administration process. Multipliers of two or more are not uncommon.  *See, e.g.*, *Retta v. Millennium Prod.,Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637, at *13 (C.D. Cal. Aug. 22, 2017) (approving a 3.5 multiplier, and citing cases where multipliers of 6.85, 3.65, and 4.3 were found to be reasonable).  Class Counsel will also seek reimbursement of litigation expenses of up to $2 million, which includes, among other things, expert witness costs and deposition costs.  [Marchino Decl. ¶ 27.]

Class Counsel are concurrently filing their fee and expense application (along

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   with Plaintiffs' request for service awards, discussed below). Class Members will thus

2   have the opportunity to comment on or object to the fee application prior to the hearing

3   on final settlement approval, as the Ninth Circuit and Rule 23(h) require. *See In re*

4   *Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 895 F.3d 597,

5   614–15 (9th Cir. 2018).

6                     **iv.**     **No Other Agreements Exist.**

7           Plaintiffs must identify any agreements "made in connection with the proposal."

8   Fed. R. Civ. P. 23(e)(3); *see* Fed. R. Civ. P. 23(e)(2)(C)(iv). This provision is aimed at

9   "related undertakings that, although seemingly separate, may have influenced the terms

10   of the settlement by trading away possible advantages for the class in return for

11   advantages for others." Fed. R. Civ. P. 23(e)(2), 2003 adv. comm. note. Plaintiffs have

12   not entered into any such agreements.

13             **4.**     **The Settlement Treats Class Members Equitably Relative to**

14                       **Each Other.**

15           The final Rule 23(e)(2) factor asks whether "the proposal treats class members

16   equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Relevant considerations

17   may include "whether the apportionment of relief among class members takes

18   appropriate account of differences among their claims, and whether the scope of the

19   release may affect class members in different ways that bear on the apportionment of

20   relief." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note.

21           Here, the settlement treats class members equitably and reflects that there are

22   three types of class members, each of whom suffered one to two types of harm:

23   nonowner occupants who have loss of use damages, nonoccupant owners who suffered

24   an injury due to the entry of the jet fuel onto their properties *e.g.*, remediation and/or

25   diminution of value, but did not suffer from loss of use because they do not have

26   possession of the property, and owner occupants who suffered both categories of harm.

27           Likewise, Plaintiffs will not receive preferential treatment or compensation

28   disproportionate to their respective harm and contribution to the case. They are

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

permitted to make claims for compensation like any other Class Member. They will request service awards, commensurate to the Mediator's proposal of Judge Meisinger, of up to $15,000 each for the time and effort they spent pursuing the matter on behalf of the Class, including participating in discovery and settlement. [Marchino Decl. ¶ 13]. Such awards "are fairly typical in class action cases." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). *See also In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044-L-MSB, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (granting $25,000 service award); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (granting $25,000 service awards to each institutional investor plaintiff). The anticipated service awards do not raise any equitable concerns about the Settlement itself. *Fleming v. Impax Labs. Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (service awards "are not per se unreasonable" and "this factor weighs in favor of preliminary approval"); *see Loomis v. Slendertone Distribution, Inc.*, No. 19-CV-854-MMA (KSC), 2021 WL 873340, at *8 (S.D. Cal. Mar. 9, 2021) (granting final approval to settlement with service award for lead plaintiff); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (same).

**B.     The Court Already Certified the Class**

The Settlement resolves claims on behalf of the previously-certified Class. [Dkt. No. 401; Settlement Agreement § II(E).] As a result, the Court "does not need to re-certify [the Class] for settlement purposes." 4 Newberg and Rubenstein on Class Actions § 13:18 (6th ed.); *accord ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019). Because "the proposed settlement [does not] call[] for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted," Fed. R. Civ. P. 23(e)(1), 2018 adv. comm. note; *ODonnell*, 2019 WL 4224040, at *7, the Court need not take any further action under Rule 23(e)(1). *See, e.g.*, *Hawkins v. Kroger Co.*, No. 15CV2320 JM (AHG), 2021 WL 2780647, at *2–3 (S.D. Cal. July 2, 2021) (granting preliminary approval to

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  previously certified class); *ODonnell*, 2019 WL 4224040, at *7 (same).

2        **C.**    **The Proposed Settlement Administrator Should Be Appointed and**

3              **the Proposed Notice Plan Approved.**

4        Plaintiffs propose that the Court appoint Verita to be the Settlement

5  Administrator, who, as Plaintiffs explained above, is the entity that Plaintiffs had

6  previously identified in their class certification motion and motion for approval of

7  notice.

8        Before a class settlement may be approved, the Court "must direct notice in a

9  reasonable manner to all class members who would be bound by the proposal." Fed. R.

10  Civ. P. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the

11  settlement in sufficient detail to alert those with adverse viewpoints to investigate and

12  to come forward and be heard." *Rodriguez*, 563 F.3d at 962; *see also* Fed. R. Civ. P.

13  23(c)(2)(b) (describing "the best notice that is practicable under the circumstances").

14        The proposed notice program here is described in detail in the concurrently filed

15  Dattilo Declaration and is based largely on the notice program Class Counsel previously

16  proposed.  As is described in greater detail in the Dattilo Declaration, notice will be

17  provided in several ways.

18        First, Verita will send notice via United States Postal Service to the addresses of

19  properties corresponding to the list of APNs that is used to define the class.  If notices

20  are returned as undeliverable, Verita will resend the notices to any new or better

21  addresses that are available.  Mailed notices will include a claim form and a copy of the

22  Joint Declaration of Testing Results

23        Second, Verita will use the APNs to identify email addresses that potentially

24  correspond to class members and send notice by email with a link to the settlement

25  website.

26        Third, Verita will conduct a digital media campaign that is geotargeted at

27  individuals who live within a 3-mile radius of the fuel jettison path.   These

28  advertisements will include a link to the settlement website.

The settlement website will allow class members to look up their property address to determine whether it is in the affected area and complete their claim forms online. They will also be able to view the complaint, short form notice, long form notice, claim form, settlement agreement, and other relevant documents.

Examples of the proposed class notice are attached as Exhibits A1-A3 to the Settlement Agreement.

**D.   The Court Should Schedule a Fairness Hearing and Related Dates.**

The next steps in the settlement approval process are to notify Class Members of the proposed Settlement, allow Class Members to file comments or objections, and hold a Fairness Hearing. Although the Settlement Agreement provides several timelines for, *inter alia,* class notice, opt-outs, objections, and the filing of the Final Approval Motion, Verita has told the Parties that it needs additional time to carry out all of its obligations under the settlement, including following up on any mailing issues, verifying and following up on any issues with the claim forms, compiling information regarding the total number of claims, opt-outs and objections, and providing the parties with the requisite information needed to file the final approval motion.  Consequently, the Parties have agreed upon the following modified schedule. Assuming the Court were to sign the Preliminary Approval Order on September 29, 2025, the Parties propose the following schedule. [8]

| | |
|---|---|
| Class Notice to be Provided | October 20, 2025 (21 days after Preliminary Approval) |
| Last day to file Objections and Opt-outs, and to postmark completed claims forms | December 19, 2025 (60 days after Class Notice to be Provided) |

---

[8] In the event the Court signs the Preliminary Approval Order before September 29, 2025, each of these dates can be moved up accordingly. For example, if the Court were to sign the Preliminary Approval Order by September 15, 2025, each of the dates could be moved up by 14 days.

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

| Last day for Plaintiffs to File Motion for Final Approval of Settlement and for Class Counsel to file Motion for Final Approval of Fees and Expenses and for Service Awards | February 2nd, 2026 (90 days post 10/20 PLUS 15 days requested by Verita – Verita data due 1/19) |
| --- | --- |
| Last day to file oppositions to Final Approval, Attorneys' Fees and Expenses and for Service Awards | February 9th, 2026 |
| Last day to file replies in support of Final Approval, Attorneys' Fees and Expenses and for Service Awards | February 16th, 2026 |
| Final Approval Hearing | March 2nd, 2026 |

## V.    DELTA'S POSITION

On January 14, 2020, one of the two engines on Delta Flight 89 ("DL89") lost thrust shortly after take-off, causing a serious and dangerous in-flight emergency. If this case were to proceed to trial, Delta would prove that the experienced pilots and cabin crew of DL89 did exactly what federal regulations and their FAA-approved training required them to do to respond to that in-flight emergency and ensure the safety of the passengers, crew, and people on the ground.

The airplane, loaded with enough fuel for a nonstop flight to Shanghai, exceeded its maximum landing weight by around 160,000 pounds. And because the pilots did not know the cause of the engine malfunction, they had to consider the risk that they also would lose the second engine. Those factors, the pilots concluded, presented unacceptable risks to the safety of their passengers and crew. As a result, the pilots immediately declared an emergency with air traffic control and began their return to LAX. To reduce the serious risks of flying and landing an overweight airplane on just

one engine, the pilots jettisoned fuel during their return. Delta contends that this emergency decision complied with all applicable Federal Aviation Administration (FAA) regulations, Delta's procedures, and the pilots' training. In fact, a subsequent FAA investigation found that the pilots acted properly under federal law in responding to this dangerous emergency. The flight crew's actions enabled all of the passengers and crew to exit the aircraft safely after the emergency landing.

Moreover, the calculations of Plaintiffs' own experts demonstrate that the amounts of jet fuel actually reaching the ground were negligible. As explained above and in the attached Joint Declaration re Bench Testing executed by Plaintiffs' and Delta's experts, even at the maximum amounts predicted by Plaintiffs' experts, any jet fuel reaching the ground would quickly dissipate and would not be detectable even one hour after the fuel jettison, let alone weeks, months, or years later. Therefore, Delta is confident it would prove at trial there was no property damage, diminution in value, or lasting harm to residents from the actions taken by the crew.

Nevertheless, as specifically set forth in the Settlement Agreement, Delta has agreed to settle Plaintiffs' claims without any admission of liability to resolve the uncertainty involved in the litigation, to avoid the significant legal expenses that it would incur by litigating the case through trial and any subsequent appeal, and to eliminate the distraction and other burdens this litigation has caused to Delta's business. Delta continues to specifically deny all liability, allegations of wrongdoing or negligence, and claims for damages. Delta remains confident in and does not waive any of its defenses, and would vigorously litigate all such defenses if this matter were to be further litigated or proceed to trial or appeal.

Among other defenses, Delta continues to believe that Plaintiffs' claims are preempted by the Federal Aviation Act and regulations issued by the Federal Aviation Administration. If either party were to appeal a jury verdict in this case, preemption would remain a primary focus of Delta's arguments to the Ninth Circuit. By settling Plaintiffs' claims, however, Delta is giving up its ability to assert its defenses at trial

and to press its preemption defense on appeal. For these and other reasons (including mootness), the Parties have agreed that a condition precedent to the Settlement is that the Court enter a Final Approval Order that not only approves the settlement of the case, but also vacates its October 27, 2023 Order Re Defendant's Motion for Summary Judgment on the Federal Standard of Care (Dkt. Nos. 602, 603). That Order addressed a novel, heavily contested issue of federal law about which reasonable minds could differ and which will be mooted by the Parties' settlement. Absent vacatur, the Order could impact Delta in other cases for years to come, despite Delta not having had an opportunity to litigate the issue before the Ninth Circuit. Yet Delta does not wish to continue litigating this matter solely to preserve its appellate rights with respect to preemption, and Plaintiffs do not wish to have a just resolution of this case delayed for what could be a period of years. Vacatur of the Order is thus a fair and reasonable condition of a settlement in this case.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs and Delta jointly respectfully request that the Court:

A.   Grant preliminary approval of the Parties' Settlement, as set forth in the concurrently filed [Proposed] Order;

B.   Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

C.   Appoint Verita Global, LLC as Settlement Administrator and direct Verita Global, LLC to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

D.   Enter a scheduling order consistent with the dates set forth above;

E.   Preliminarily vacate the Court's October 27, 2023 Order Re Defendant's Motion for Summary Judgment on the Federal Standard of Care (Dkt. Nos. 602, 603).

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

DATED: August 25, 2025          **THE X-LAW GROUP, P.C.**

By: */s/ Filippo Marchino*
FILIPPO MARCHINO, ESQ.,
Class Liaison Counsel and Attorneys
for Class Plaintiffs


DATED: August 25, 2025          **KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
KING & SPALDING LLP
ARWEN R. JOHNSON
DAVID K. WILLINGHAM

**CLYDE & CO US LLP**
JEFFREY J. ELLIS
KEVIN R. SUTHERLAND
AUTUMN E. LEWIS
DAVID F. KNAPP

Attorneys for Defendant
Delta Air Lines, Inc.

* Pursuant to Local Rule 5-4.3.4(a)(2), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

**CLASS PLAINTIFFS' AND DELTA AIR LINES, INC.'S JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**